## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KRYSZTOF KOSIERADZKI, ET AL, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 3:20-cv-01338-JBA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EVERSOURCE SERVICE ENERGY | : | September 17, 2020 |
| COMPANY | : | |
| | : | |
| Defendant, | : | |

## <u>MOTION FOR LEAVE TO FILE AMENDED COMPLAINT</u>

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Plaintiffs Krysztof Kosieradski, et al, (collectively, "Plaintiffs") respectfully move the Court for leave to file the attached Amended Complaint for substituting the named party defendant, for Clarification Purposes only (for the defined "putative class" alleged in their original complaint), dated August 7, 2020 ("Amended Complaint"); and to correct Scribner's errors.  Rule 15 provides that "a party may amend its pleading [with] the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  *See, e.g.,*<u>Coe v. Bell</u>, 161 F.3d 320, 341 (6<sup>th</sup>Cir. 1988).  Thus, the court has the discretion to grant or deny a request for leave to file an amended pleading. *See* <u>Zenith Radio Corp. v. Hazeltine Research, Inc.</u>, 401 U.S. 321, 330, 91 S. Ct. 795, 28 L. Ed. 2d 77 (1971) ("It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court."); *see also* <u>Cureton v. Nat'l Collegiate Athletic Ass'n,</u> 252 F.3d 267, 272 (3d Cir. 2001) ("[A] motion for leave to amend a complaint [is] addressed to the sound discretion of the district court.").  The rule is part of a "liberal policy of permitting amendments to ensure the determination of claims on the

merits." <u>Marks v. Shell Oil Co.</u>, 830 F.2d 68, 69 (6[th]Cir.1987). Where there is neither a showing of the movant's undue delay, bad faith or dilatory motive, nor a showing of undue prejudice to the opposing party by virtue of allowance of the amendment, leave to amend should be granted." <u>In re Winstar Commc'ns.</u>, No. 01 CV 3014(GBD), 2006 U.S. Dist. LEXIS 7618, at *4 (S.D.N.Y. Feb. 27, 2006) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Acito v. IMCERAGrp.</u>, 47 F.3d 47, 55 (2d Cir. 1995) ("Although the decision of whether to allow plaintiffs to amend their complaint is left to the sound discretion of the district court, there must be good reason to deny the motion."). Rule15(a)(2) is "interpreted liberally and an amendment is normally permitted." <u>BNP Paribas Mortg. Corp. v. Bank of Am., N.A.</u> 886, F.Supp. 2d 257, 272 (S.D.N.Y. 2012) (quoting <u>Ohio Cas. Ins. Co. v. Transcontinental Ins. Co.</u>, No 05-6432 BSJ RLE, 2006 WL 1540540, at *1 (S.D.N.Y. May 31, 2006)) In general "amendments are favored because they 'tend to facilitate a proper decision on the merits.' " <u>In re Bernard L. Madoff Inv. Sec. LLC</u>, 560 B.R. 208, 221 (Bankr. S.D.N.Y. 2016). Quoting <u>In re Facebook, Inc., IPO Sec. & Derivative Litig.</u>, 986 F.Supp.2d 428, 472 (S.D.N.Y. 2013). Plaintiffs move to file the Amended Complaint prior to the filing of any responsive pleading "as of right" within the time permitted by the Court. Allowing Plaintiffs to file the Amended Complaint would serve justice and promote judicial efficiency. Further, there would be no substantial or undue prejudice, bad faith, undue delay, or futility given that this Amended Complaint's purpose is to substitute The Connecticut Light and Power Company d/b/a Eversource Energy ("CL&P") as the proper party defendant, without adding any new causes of action or new claims for relief; to *clarify* their original intent and definition of the "putative class of homeowners and business owners" alleged in their original complaint affected by the Tropical Storm; prior to any filing of responsive pleadings by the defendant, to reflect a purely "Connecticut-based" putative class of citizens and

residents domiciled in Connecticut; and to correct minor Scribner's errors in the original complaint.

## PROPOSED AMENDED COMPLAINT

1.      The plaintiffs Krysztof Kosieradzki; Stan Baker d/b/a Acupuncture of Greater Hartford; and Michael O'Neill bring this class action on behalf of themselves and other Connecticut homeowners and business owners who were electrical service customers of the defendant, **The Connecticut Light and Power Company d/b/a Eversource Energy ("CL&P")**, and who lost their electrical power as described below.

2.      Plaintiffs bring this action as a class action **on behalf of all primary residents and/or citizens domiciled in the State of Connecticut** pursuant to Practice Book §9-7 *et seq*.

## PARTIES

3.      Plaintiffs are business entities, homeowners and/or individuals over the age of 18 and are residents and**/or citizens domiciled in** Connecticut.  They bring this action on their own behalf and on behalf of a class **all primary residents of Connecticut domiciled in the state and** of others similarly situated.

4.      Krysztof Kosieradzki (hereinafter "Krystof"), is a homeowner whose primary residence is located at 52 Littlebrook Xing in Farmington, Connecticut and whose residence is powered by electricity purchased from **The Connecticut Light and Power Company d/b/a/ Eversource Energy("CL&P")**.; Michael O'Neill is a homeowner whose primary residence is located at 20 Highland Terrace, New Britain, Connecticut and whose is powered by electricity purchased from **The Connecticut Light and Power Company d/b/a/ Eversource Energy ("CL&P")**.

5.     Acupuncture of Greater Hartford owned and operated by Stan Baker, (hereinafter "Baker") was and is a  company organized and existing under the laws of the State of Connecticut with a principal place of business in West Hartford, Connecticut.  Baker engages in the business of providing services of Acupuncture and Chinese herbalist.

6.     **The Connecticut Light and Power Company d/b/a Eversource Energy ("CL&P") is a specially chartered Connecticut public service company as defined by C.G.S. § 16-1(3), with its principal place of business located at 107 Selden Street, Berlin, Connecticut** that provides electricity to much of Connecticut.  The largest utility company in Connecticut, **The Connecticut Light and Power Company d/b/a/ Eversource Energy ("CL&P")**, according to its official website, provides electricity to 1.2 million customers in 149 cities and towns in the state.

7.     **The Connecticut Light and Power Company d/b/a/ Eversource Energy ("CL&P")** has an effective monopoly in the electricity markets it serves in Connecticut because there are few, if any, competing electricity providers from which customers can choose.

## THE TROPICAL STORM

8.     On or about August 4, 2020, a tropical storm (hereinafter "tropical storm" or "the storm"), now known as Tropical Storm **Isaias**, hit Connecticut.  This storm led to massive power outages throughout the state.  Most of those without power were customers of **The Connecticut Light and Power Company d/b/a/ Eversource Energy ("CL&P")**.

## PLAINTIFFS' TRANSACTIONS

### Krysztof Kosieradzki

9.      Since owning the residence at 52 Littlebrook Xing and all times mentioned herein, Krystof Kosieradzki (hereinafter "Krystof") has purchased its electricity solely from **The Connecticut Light and Power Company d/b/a/ Eversource Energy ("CL&P")**.

10.     On or about August 4, 2020, Krysztof Kosieradzki lost their power.  Krysztof Kosieradzki has not had their power restored as of the filing of this August 7, 2020 complaint.

11.     As a result of being without electricity during the aforementioned time, Krysztof was unable to continue living conditions in their residence.  Unable to run its electrically-powered equipment, Krystof has been unable to maintain their daily life.  In addition, the power outage shut off the refrigerator causing a great deal of food to spoil.  All other appliances operating on electrical power have not been able to work rendering Krystof's residence under said living conditions uninhabitable.

### Acupuncture of Greater Hartford (Baker)

12.     At all times mentioned herein, Baker purchased its electricity solely from **The Connecticut Light and Power Company d/b/a/ Eversource Energy ("CL&P")** for use in its business, Acupuncture of Greater Hartford (hereinafter "Baker") in West Hartford, Connecticut.

13.     On or about August 4, 2020, Baker lost its power.  Baker did not have its power restored as of the filing of this August 7, 2020 complaint.

14.     As a result of being without electricity during the aforementioned time, Baker was unable to conduct its regular business and operate Acupuncture of Greater Hartford.  Unable to run its electrically-powered equipment, Baker had to remain closed and cancelled many appointments, causing it to suffer lost revenue, lost profits and economic damages.

**Michael O'Neill**

15.    Since owning the residence at 20 Highland Terrace, New Britain, Connecticut and all times mentioned herein, Michael O'Neill (hereinafter "O'Neill") has purchased its electricity solely from **The Connecticut Light and Power Company d/b/a/ Eversource Energy ("CL&P")**.

16.    On or about August 4, 2020, Michael O'Neill lost their power.  O'Neill has not had their power restored as of the filing of this August 7, 2020 complaint.

17.    As a result of being without electricity during the aforementioned time, O'Neill was unable to continue living **under the** conditions **at that time** in their residence.  Unable to run its electrically-powered equipment, O'Neill has been unable to maintain their daily life.  In addition, the power outage shut off the refrigerator causing a great deal of food to spoil.  All other appliances operating on electrical power have not been able to work rendering O'Neill's residence under said living conditions uninhabitable.


**CLASS ALLEGATIONS**

18.    Plaintiffs bring this action as a class action.  The class is comprised of **Connecticut Residents and/or Citizens domiciled in Connecticut who are *primary*** homeowners and business owners who are similarly situated to the plaintiffs in that they:

      a.    are located in and conduct their business in Connecticut;

      b.    are customers of the defendant; and

      c.    lost their electrical power following the **tropical storm** for an unreasonable period of time as described below.

19.     Plaintiffs are unable to state the precise number of potential class members, because that information is exclusively in the possession of **The Connecticut Light and Power Company d/b/a/ Eversource Energy ("CL&P")** and readily available through discovery.  Plaintiffs believe, and on that basis allege, that the potential class number is likely in excess of one thousand businesses based upon the size of the area **The Connecticut Light and Power Company d/b/a/ Eversource Energy ("CL&P")** covers and its status as the largest electrical provider in the state.

20.     There is a unity of interest among the members of the proposed class in that there are questions of law and fact common to the proposed class that predominate over questions affecting only individual members.

21.     Plaintiffs' claims are typical of those of the class they seek to represent.

22.     Plaintiffs and the proposed class are represented by counsel experienced in both consumer protection and class action litigation, and plaintiffs have no known conflicts with other members of the proposed class.

23.     The common questions of law and fact predominate over any individual questions that may arise, and any individual questions are subordinate to the common questions concerning whether the defendant was negligent, reckless, and/or in breach of contract with respect to the class members.

24.     A class action is superior to other methods for the fair and efficient adjudication of the controversy.  Because the claims of the individual class members are relatively small compared to the expense and burden of litigation, it would be impracticable and economically unfeasible for class members to seek redress individually.  The prosecution of separate actions by the individual class members, even if possible or likely, would create a risk of inconsistent or

varying adjudications with respect to the claims asserted by individual class members, and could create incompatible standards of conduct for **The Connecticut Light and Power Company d/b/a/ Eversource Energy ("CL&P")** .

## FIRST COUNT  (NEGLIGENCE)

25.    The damages suffered by the plaintiffs were proximately caused by the defendant's failure to supply the plaintiffs with electricity, which resulted from the defendant's negligence. The defendant was negligent in one or more of the following ways:

    a.  IN THAT prior to the storm it did not take  appropriate and effective measures to prevent the interruption of electrical service caused by a storm;

    b.  IN THAT prior to the storm it did not adequately trim trees to prevent trees and branches from falling on power lines as a result of a storm;

    c.  IN THAT prior to the storm it did not keep its electrical distribution equipment in proper condition;

    d.  IN THAT prior to the storm it did not take advantage of available technologies and safeguards, in use by other utility companies, that can prevent and/or reduce the incidence and/or severity of power outages caused by storms and otherwise;

    e.  IN THAT prior to the storm, despite being aware of the risk of inclement weather due to weather forecasts as well as it being close to winter in Connecticut, in which  **The Connecticut Light and Power Company d/b/a/ Eversource Energy ("CL&P")** has operated for over 90 years, it did not take appropriate and effective measures to have adequate personnel, equipment and other resources ready and prepared to effectively deal with weather-related emergencies on a timely basis;

    f.  IN THAT prior to the storm it did not have backup and/or supplemental work crews ready and available to be deployed for electrical power outage restoration efforts;

    g.  IN THAT prior to the storm it did not have adequate backup power sources ready and available to be deployed in connection with power outages ;

    h.  IN THAT prior to the storm it did not have in place an overall and/or comprehensive plan to prevent and/or minimize the risk of power outage emergencies and/or to respond to power outage emergencies;

      i.  IN THAT it did not comply with regulations promulgated by the Connecticut **Public Utilities Regulation Authority (PURA)**;

      j.  IN THAT after the power outages caused by the storm occurred, it failed to take timely and effective action to restore power, including but not limited to failing to deploy sufficient manpower and equipment to restore power on a timely basis; and

      k.  IN THAT it had not fully paid outside companies which were needed to assist in the power restoration efforts and as a result those companies refused to assist in the power restoration efforts and/or were delayed in assisting in the power restoration efforts.

## SECOND COUNT (BREACH OF CONTRACT)

1-25.  Paragraphs 1-25 of the First Count are hereby made corresponding and incorporated Paragraphs 1 through 25 of this, the Second Count, as fully set forth hereinafter.

26.    At all times mentioned herein, the plaintiffs and defendant were parties to a contract the terms of which included that the defendant would supply the plaintiffs with continuous electricity and the plaintiffs would pay the defendant for that electricity.

27.    By failing to provide electricity to the plaintiffs for the aforementioned period, the defendant breached its contract with the plaintiffs.

28.    As a result of the defendant's aforementioned breach of contract, the plaintiffs were unable to run their residences as well as their businesses and suffered lost revenue and economic damages.

## THIRD COUNT (RECKLESSNESS)

1-25.  Paragraphs 1-25 of the First Count are hereby made corresponding and incorporated Paragraphs 1 through 25 of this, the Third Count, as fully set forth hereinafter.

26.    The damages suffered by the plaintiffs were proximately caused by the defendant's recklessness in one or more of the following ways:

      a.  IN THAT well in advance of the subject storm it knew it was unprepared to deal with

a large-scale power outage emergency that would cause it customers, including but not limited to the plaintiffs, to suffer losses and damages, yet despite that knowledge failed to take appropriate and effective action to correct that unpreparedness; and

b. IN THAT after the storm and the massive power outages, it made a conscious and fully informed decision not to undertake all reasonable measures to restore power to all of its customers, including but not limited to the plaintiff, as soon as possible, despite knowing full well the losses and damages that its customers would be caused to suffer by that decision.

## FOURTH COUNT (VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT)

1-25.   Paragraphs 1-25 of the First Count are hereby made corresponding and incorporated Paragraphs 1-25 of the Forth Count, as fully set forth hereinafter.

26.    The actions of the defendant were done in the course of "trade" and "commerce" as defined in Sec. 42-110a(4) of the Connecticut General Statutes, the Connecticut Unfair Trade Practices Act.

27.    The defendant's, **The Connecticut Light and Power Company's d/b/a/ Eversource Energy's ("CL&P's")** failure to provide electricity and/or proper and timely remediation and restoration of power and/or non compliance with **PURA** regulations, as well as artificially inflate wholesale and retail delivery power prices constituted unfair trade practices and thereby violated Sec.42-110b of the Connecticut General Statutes.

28.    The aforesaid conduct of **The Connecticut Light and Power Company d/b/a/ Eversource Energy ("CL&P")** offends public policy and was immoral and/or unethical and/or oppressive and/or unscrupulous and caused substantial injury to the plaintiffs and as such constitutes unfair practices in violation of the Connecticut Unfair Trade Practices Act, C.G.S. section 42-110a et seq.

## **CONCLUSION**

Wherefore, the Plaintiffs' proposed amendment to substitute the proper party defendant, for clarification, and to correct Scribner's errors is appropriate and consistent with case law.  The Plaintiffs' proposed amendment will not unfairly prejudice the defendant.  Most importantly, the proposed amendment(s) will properly name the party defendant; and clarify the claims at issue in the case.  The purpose of the Amended Complaint in addition to substitute and name the proper party defendant is to clarify the original intent of the covered litigated class description of the putative class in the original complaint as "citizens" of Connecticut instead of "residents" of Connecticut; and would constitute a "clarification" for jurisdictional purpose and not an true amendment for jurisdictional purpose; thereby allowing the Court to consider the Amended Complaint in determining a remand back to state court.   The purpose of the plaintiffs' Amended Complaint is to clarify issues pertaining to jurisdiction under CAFA and not for the purpose of eliminating a federal question to avoid federal jurisdiction. A similar issue of a "clarification" amendment request was argued in <u>Benko v. Quality Loan Serv. Corp.</u>, 789 F.3d 1111, 1117 (9th Cir. 2015).  Here, the Ninth Circuit explained that, "[w]here a defendant removes a case to federal court under CAFA, and the plaintiffs amend the complaint to explain the nature of the action for purposes of our jurisdictional analysis, we may consider the amended complaint to determine whether remand to the state court is appropriate." The proposed Amended Complaint does not add new parties nor does it add new allegations to the action, thereby prejudicing the defendant.  Therefore, liberally applying the policy of favoring amendments to pleadings, Plaintiffs respectfully request that this Court enter an order granting Plaintiffs leave to file their Amended Complaint.   The plaintiffs contend that this request of using the Amended Complaint to *clarify* certain jurisdictional facts can be construed as an exception to the general rule that

courts must look at pre-removal filings to determine jurisdiction.  See <u>Smilow, et al. v. Anthem</u> <u>Blue Cross Life and Health Insurance Co.</u>, 2015 WL 4778824 (C.D. Cal. Aug. 13, 2015). Respectively, for the aforementioned reasons, the plaintiffs request that the Court grant their Motion for Leave to file their Amended Complaint in the above action.

PLAINTIFFS, Krysztof Kosieradzki et al,
and on behalf of others similarly situated,

**<u>/s/ Edward A. Jazlowiecki</u>**
Edward A. Jazlowiecki (ct12189)
Jazlowiecki & Jazlowiecki
11 Lincoln Avenue, Suite 6
Bristol, CT 06010
(860) 674-8000